UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONYA R. POWELL,

                                                **Plaintiff,**

   -against-                                                       **04-CV-1192**
                                                                        **(TJM/DEP)**

**MAYOR RICHARD BUCCI, in his official capacity;**
**POLICE CHIEF JOHN BUTLER, in his official capacity;**
**and OFFICER MICHAEL CHALSON, in his official**
**capacity and Individually,**

                                                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I. INTRODUCTION**

Plaintiff, Tonya Powell, commenced this action *pro se* alleging a violation of her constitutional and federally protected rights. See 3rd Amd. Compl., Statement of Facts, ¶¶ 11, 24, 28, dkt. # 21.[1] Plaintiff contends that, on August 13, 2004, Defendant Police Officer Michael Chalson pulled her over while she was driving in the City of Binghamton, New York. When asked, Officer Chalson told Plaintiff that he pulled her over because she was driving an unregistered

---

[1] The 3rd Amended Complaint is comprised of different sections (an introduction, a "statement of facts," and an "argument") each containing separately numbered paragraphs starting with "1," four "counts" (un-numbered), and a prayer for relief (successively lettered). Although not specifically referenced, the Court presumes Plaintiff proceeds pursuant to 42 U.S.C. § 1983 ("Section 1983").

vehicle. Id. ¶¶ 4-5.  Plaintiff alleges that Officer Chalson pulled her over on account of her race, lacked probable cause for the stop, and thereby seized her in violation of the Fourth and Fourteenth Amendments of the United States Constitution.  See Id.  ¶¶ 11, 24, 28 and Count 3, page 11. Plaintiff further alleges that the City of Binghamton Police Department had a policy or custom of conducting traffic stops without probable cause on the basis of race.  See 3rd Amd. Compl., Statement of Facts, ¶¶ 13, 33, 34.  Plaintiff alleges that these policies were implemented by Defendants Mayor Bucci and Police Chief Butler. Id. ¶ 36.  She further alleges that, in implementing this policy, Officer Chalson "acted with discriminatory intent or motive" when he stopped the car she was driving on August 13, 2004.  Id. ¶¶ 20, 28.  Additionally, Plaintiff contends that the practice of unconstitutional stops which led to the violation of her rights was the result of Defendants Mayor Bucci and Police Chief Butler's failure to properly train or supervise Police Department employees. Id.  ¶¶ 8, 36, 37.

While Plaintiff concedes in the Third Amended Complaint that a conviction resulted from the traffic stop, id. ¶¶ 19-20, it is unclear from the face of this pleading exactly what charge the conviction was based upon.[2]  Plaintiff seeks, inter alia, damages for "humiliation, mental pain and suffering" caused by the Defendants' alleged violations of her constitutional rights.  See id., Counts 1–3, p. 10–11.  Plaintiff also seeks to have "the evidence obtained be dismissed under the 'Fruit of the Poisonous Tree'" and the restoration of her "full driving privileges" on the grounds that Defendants' conduct violated her rights under Title VI of the Civil Rights Act of 1964 and 28

---

[2] While this Court has not been confronted with any record of a particular conviction, the parties do not appear to contest either that: 1) Plaintiff was convicted of a traffic offense arising out of the August 13, 2004 stop; or 2) a final state-court judgment has been entered in that matter.  See generally 3rd Amd. Compl., Argument, ¶¶ 19–22; Def. Mem. L., p. 7.

C.F.R. § 42.104. See id., Count 4, p. 12.

Now before the Court is Defendants' motion to dismiss the Plaintiff's Third Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. # 27. Plaintiff has opposed this motion on all grounds. Dkt. #28. For the reasons that follow, Defendants' motion is **granted in part and denied in part**.

## II. DISCUSSION

### A. Rooker-Feldman

The first question presented is whether the Court is deprived of subject matter jurisdiction under the Rooker-Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 103 S.Ct. 1303, 1311 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 150 (1923). The Rooker-Feldman doctrine precludes federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. ----, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005); see Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005)("Where a federal suit follows a state suit, the former may be prohibited by the so-called Rooker-Feldman doctrine in certain circumstances."). This is because, among federal courts, only the Supreme Court possesses appellate jurisdiction over state court judgments. Rooker, 263 U.S. at 414-15. Thus, federal district courts lack the subject matter jurisdiction to nullify a decision or judgment of a state court. Id. Under the Rooker-Feldman doctrine, "a party losing in state court is barred from seeking what in substance would be appellate

3

review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)(citing Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416).   However, in order for the Rooker-Feldman doctrine to bar a federal suit which seeks to have a state decision reviewed and rejected, such federal suits must meet two further requirements: "1) the federal suit must follow the state judgment; and 2) the parties in the state and federal suits must be the same." Hoblock, 422 F.3d at 89 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

Plaintiff seeks, among other things, to have this Court overturn her state court conviction and restore her driving privileges.  See 3rd Amd. Compl., Argument, ¶¶ 19–22 and Count 4, p. 12. Inasmuch as Plaintiff is the same party aggrieved by the state court conviction from the August 13, 2004 incident in which she was ticketed by Defendant Chalson, the Rooker-Feldman doctrine would apply to any claim (or any part of any claim) seeking to overturn the conviction (and have Plaintiff's driving privileges restored).  See Hoblock, 422 F.3d at 92.   However, this Court cannot agree with the Defendants' contention that the Plaintiff "implicitly asks for the same relief in every cause of action she attempts to state." Def. Mem. L., p. 7. Except for Count 4, the remaining counts pled in the Plaintiff's Third Amended Complaint seek damages for "humiliation, mental pain and suffering" caused by the various alleged Constitutional and federal statutory violations arising from her August 13, 2004 traffic stop.  See 3d Amd. Compl., Counts 1–3, p. 10–11.  To the extent that those alleged violations are purported to arise from the traffic stop itself, and not from Plaintiff's state-court conviction, the Rooker-Feldman doctrine does not bar this Court from entertaining the claims. Accordingly, the Court will address these claims under Federal Rule of Civil Procedure 12(b)(6).

4

### B.  Rule 12 (b) (6) Standard of Review

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Further, "the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff." Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), or where the complaint fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002). Thus, a federal court's task in determining the sufficiency of a complaint is "necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "The appropriate inquiry is not whether the plaintiff might ultimately prevail on her claim, but whether she is even entitled to offer any evidence in support of the allegations in the complaint." Smith v. City of New York, 290 F. Supp.2d 317, 319 (S.D.N.Y. 2003).

When a plaintiff is proceeding *pro se,* the Court must liberally construe the pleadings. See, e.g., Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).  Moreover, a "court should give the *pro se* litigant special latitude in responding to a motion to dismiss." Gaston v. Gavin, 1998 WL 7217, at *1 (S.D.N.Y. Jan. 8, 1998), aff'd, 172 F.3d 37 (2d Cir. 1998). "Where a *pro se* litigant is involved, the same standards for dismissal apply. However, when deciding a motion to dismiss, the Court may consider allegations that are contained in a *pro se* plaintiff's opposition papers."

Weinstein v. Albright, 2000 WL 1154310, at *2 (S.D.N.Y. Aug. 14, 2000)(citing Burgess v. Goord, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999)).

### C. *Prima Facie* case and the Heck Rule

As indicated, Plaintiff seeks damages arising from her alleged unlawful seizure. Plaintiff states a *prima facie* case of unlawful seizure inasmuch as she asserts that she was stopped and detained without probable cause to believe that she committed a traffic violation. See Terry v. Ohio, 392 U.S. 1 (1968)(Whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave, that individual has been "seized" or "arrested" within the meaning of the Fourth Amendment.); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)(A cause of action for false arrest will lie where the plaintiff shows, *inter alia*, "that the defendant intentionally confined him without his consent and without justification."); see also Delaware v. Prouse, 440 U.S. 648, 663 (1979)(A motorist may permissibly be stopped by a police officer and detained when there is at least articulable and reasonable suspicion that either the vehicle or an occupant has violated some law, such as a provision of New York's Vehicle and Traffic Law.); United States v. Harrell, 268 F.3d 141, 148 (2d Cir. 2001)( "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (quoting Whren v. United States, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996)).

However, as indicated above, Plaintiff was convicted of some traffic infraction resulting from the August 13, 2004 stop. It is well settled that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

6

>reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)(footnote omitted); see Edwards v. Balisok, 520 U.S. 641, 646 (1997); Channer v. Mitchell, 43 F.3d 786, 787 (2d Cir. 1994).

Defendants contend that the Plaintiff "cannot plead that her success on any of her four causes of action would not imply the invalidity of her state conviction." Def. Mem. L. (dkt. #27, pt. 3), p. 9. Indeed, the Plaintiff's fourth claim explicitly requests "that the evidence obtained be dismissed under the 'Fruit of the Poisonous Tree' [] [a]nd restore the Plaintiff's full driving privileges." See 3rd Amd. Compl., Count 4, p. 12. With regard to this claim, the "essence of Plaintiff's claim" attacks the validity of his conviction. Channer, 43 F.3d at 787. Obviously, such relief cannot be granted unless the Plaintiff is exonerated of the crimes for which she was convicted. Because Plaintiff has not pled that she was exonerated of the conviction, Count 4 would have to be dismissed under Heck if it were not barred by the Rooker-Feldman doctrine.

The analysis regarding the remaining three claims is more difficult because Plaintiff's Third Amended Complaint does not identify the basis of her conviction. Plaintiff seeks damages for "humiliation, mental pain and suffering" caused not by her conviction, but by the initial traffic stop which she alleges was "without probable cause or reasonable suspicion." See 3rd Amd. Compl., Counts 1–3, p. 10–11. It is possible that Plaintiff was convicted of a traffic violation that Defendant Chalson learned of *after* he stopped the vehicle but that he did not have a reasonable basis to stop the vehicle in the first place. If this were the situation, then Plaintiff would have a legally cognizable claim for that period of detention from the initial stop up to the point when Defendant Chalson

obtained probable cause to detain Plaintiff. See Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999), cert. denied, 120 S.Ct. 398 (1999). Given the uncertainty surrounding the basis of the subsequent conviction, and taking the Plaintiff's allegations as true for the purposes of this motion, the Court must indulge the possibility that Plaintiff has legally cognizable claims for violation of constitutional or federally protected rights up to the point that Chalson gained probable cause to issue a ticket.[3] These claims, if they exist, would not be barred by the Heck rule. Thus, the motion is denied in this regard, and Defendants may renew the motion on summary judgment.

### D. Qualified Immunity

Defendants Chalson also moves to dismiss the claims against him on the grounds that he is entitled to qualified immunity.[4] "Qualified immunity 'shields police officers ... from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" Holeman v. City of New London, — F. 3d —, —, 2005 WL 2403746, at *2 (2d Cir., Sept. 30, 2005)(quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)). It cannot be disputed that on August 13, 2004, the day of the stop at issue, it was

---

[3] The Court has its doubts about the viability of the remaining claims. If Plaintiff was convicted of driving an unregistered vehicle, and that was the reason that she was stopped (as she alleges she was told at the time the officer approached her vehicle), then Plaintiff would seem to have no claim for illegal detention or discrimination. See Cameron v. Forgarty, 806 F.2d 380 (2d Cir. 1986)("Where law enforcement officers have made [an] arrest, [a] resulting conviction is [a] defense to section 1983 action[s] asserting that [the] arrest was made without probable cause."); Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003)("If probable cause existed, [Defendant] as a police officer would be privileged to make an arrest."); Devenpeck v. Alford, -- U.S. --, --, 125 S.Ct. 588, 593 (2004)("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." )(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003); Devenpeck, 125 S.Ct. at 593-94 (The probable cause inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant.); Whren v. United States, 517 U.S. 806, 813 (1996)(The "actual motivations of the individual officers involved" in a stop or detention "play no role" in the probable cause analysis.).

[4] Defendants Bucci and Butler were sued in their official capacities only. An "official capacity" suit against an individual defendant is one and same as a claim against the municipality. Kentucy v. Graham, 473 U.S. 159, 165-66 (1985); see Riley v. Town of Bethlehem, 44 F. Supp.2d 451, 465 (N.D.N.Y. 1999)("It is apodictic that claims against an individual in his official capacity are to be treated as claims against the municipality."). Therefore, they are not entitled to assert qualified immunity because it is a defense to individual action, not municipal action.

clearly established law that a police officer could not stop a vehicle without a reasonable suspicion that a traffic violation had occurred. However, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003)(internal quotation marks and citations omitted). Chalson's qualified immunity argument turns on factual issues. See Def. Mem. L., p. 24. Thus, although the Court recognizes that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," Saucier v. Katz, 121 S.Ct. 2151, 2155-56 (2001), the qualified immunity defense cannot be resolved on this Rule 12(b)(6) motion. See McKenna v. Wright, 386 F. 3d 432, 436 (2d Cir. 2004). [5]

### E. Municipal Policy Claim

Finally, Defendants assert that Plaintiff has failed to plead a cognizable claim against the municipality. The Court does not agree.

A municipality may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*. Smith v. City of New York, 290 F. Supp.2d 317, 321 (S.D.N.Y. 2003)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees,

---

[5] In McKenna, 386 F. 3d at 436, the Second Circuit wrote:

> [A] defendant presenting [a qualified] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support h[er] claim, but also those that defeat the immunity defense.

9

a plaintiff must show that the violation of her constitutional rights resulted from a municipal custom or policy. Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1986)). Ultimately, the plaintiff must demonstrate a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). In this regard, the plaintiff must show that the municipal policy was the "'moving force [behind] the constitutional violation.'" Id. at 389 (quoting Monell, 436 U.S. at 694.

The policy or custom in issue need not be contained in an explicitly adopted rule or regulation, but rather can be shown when "practices ... are persistent and widespread, [such that] they could be so permanent and well settled as to constitute a custom or usage with the force of law." Sorlucco v. New York City Police Department, 971 F.2d 864, 871 (2d Cir. 1991). However, "before the actions of subordinate [] employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Id. (internal quotations and citations omitted); see Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").

Further, a municipal custom or policy may also be shown by "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." DeCarlo v. Fry, 141 F.3d 56, 61-62 (2d Cir. 1998) (internal quotations omitted). Finally, Monell liability exists "where an official has final authority over significant matters involving the exercise of discretion [such that] the choices he makes represent government policy." Clue v. Johnson, 179 F.3d 57, 62 (2d Cir. 1999).

In Leatherman, 507 U.S. at 168, the Supreme Court rejected the application of a heightened pleading standard in civil rights cases alleging municipal liability. While courts in this Circuit have

10

held in the past that "[t]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference," Dwares v. City of New York, 985 F.2d 94, 100-01 (2d Cir. 1993); see Ricciuti, 941 F.2d at 124 ("What is a properly 'short and plain' pleading depends, of course, on the circumstances of the case and the nature of the claim, and [ ] prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory."), the Supreme Court in Swierkiewicz v. Sorema N.A. made clear that the pleading requirement demanded under Fed. R. Civ. P. 8 is minimal when tested on Rule 12(b)(6) motion. See Swierkiewicz, 534 U.S. at 512; see Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003)(Holding that the liberal pleading rules discussed in Swierkiewicz "apply with particular stringency to complaints of civil rights violations.").

In this case, the Third Amended Complaint is heavy on rhetorical verbiage and light on specific factual allegations surrounding the particulars of Plaintiff's traffic stop and detention. Nonetheless, there are sufficient facts and allegations pled in the Third Amended Complaint to put the City on notice of the municipal liability claim asserted against it. The allegations indicate that Plaintiff intends to prove that the City failed to appropriately train and supervise its employees on the necessity of having a reasonable suspicion of wrongdoing before stopping a vehicle, and that the manifestations of this improper supervision and training was realized during Plaintiff's arrest. The viability of the stated claim must be tested on a motion for summary judgment after discovery or at trial, not on a Rule 12(b)(6) motion. See Swierkiewicz, 534 U.S. at 512; Anderson v. County of Nassau, -- F. Supp.2d –, 2004 WL 32766, at * 4 (S.D.N.Y. Jan. 4, 2004)(denying motion to dismiss municipal liability claim as to the City of Long Beach). Thus, the motion on this ground is denied.[6]

---

[6] The Court also questions the viability of the "failure to train and supervise claim" if it is established that (1) the reason Plaintiff was stopped was because she was driving an unregistered vehicle, and (2) she was convicted of this traffic infraction. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(*per curiam*)("[T]his was an action for

III.  CONCLUSION

Based upon the reasons set forth above,  Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**.  Count 4 of the Third Amended Complaint is **DISMISSED** for lack of subject matter jurisdiction. Because there is uncertainty regarding a potentially dispositive issue that seemingly can be  resolved absent lengthy and expensive discovery, see fns. 2, 3 & 6, *supra*, the Court orders the parties (under the direction of Magistrate Judge Peebles) to first engage in limited discovery surrounding the basis for Plaintiff's August 13, 2004 traffic stop and any convictions that arose from this traffic stop.  Following this period of limited discovery, the parties shall have the right to bring summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure.  If any part of the case remains viable following such summary judgment motions, the remaining parties shall  have the ability to conduct full discovery (as directed by Magistrate Judge Peebles) , and are granted leave to file a second motion for summary judgment following this second phase of discovery.   **IT IS SO ORDERED**.

DATED:November 30,2005

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

---

damages, and neither Monell[], nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); Smith, 175 F.3d at 107 (summary judgment properly granted to municipality where Court held that plaintiff had suffered no constitutional violation because officer had probable cause to arrest); Mura V. Erie Cty. Sheriff Dept., 2005 WL 615754, at *5 (W.D.N.Y. March 16, 2005)("Given [the Court's] determination that there was ample probable cause for plaintiff's arrest, there is no basis for finding that the Sheriff's Department implemented faulty policies.").