UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONYA R. POWELL
                                  **Plaintiff,**

-against-                                          04-CV-1192

**MAYOR RICHARD BUCCI, in his official capacity; POLICE CHIEF JOHN BUTLER, in his official capacity; and OFFICER MICHAEL CHALSON, in his official capacity and individually,**

                                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

      Plaintiff Tonya Powell commenced this action *pro se* alleging that Defendant Michael Chalson, a City of Binghamton Police Officer, pulled her over and issued her traffic tickets because of her race and without probable cause, thereby violating her constitutional and federally protected rights.  Plaintiff further alleges that the City of Binghamton has an unconstitutional policy, practice or custom of targeting racial minorities in traffic stops. Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has opposed the motion. For the reasons that follow, the motion is granted in part and denied in part.

**II. STANDARD FOR SUMMARY JUDGMENT**

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002); Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999). The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). In determining whether to grant summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences from the submitted materials in a light most favorable to the non-moving party. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004). However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in her

2

pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). In this regard, a plaintiff may not create a question of fact by simply making vague, conclusory allegations or broad denials, Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003), or by submitting an affidavit that contradicts prior sworn testimony. Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996). The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. Aziz Zarif Shabazz, 994 F. Supp. at 467.

The Court must construe a *pro se* litigant's pleadings and papers liberally[1] and interprets them to raise the strongest arguments that they suggest. Veloz v. New York, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004). However, the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3), [2] Govan,

---

[1] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Govan, 289 F. Supp.2d at 295. The Court has an obligation to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. Id.

[2] The courts of the Northern District adhere to a strict application of Local Rule 7.1(a)(3) requirement on summary judgment motions, specifically providing that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Govan, 289 F. Supp.2d at 295. Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." Id.; see also, Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999).

289 F. Supp.2d at 295, and to cite to a specific facts that, if proven at trial, would establish the claim. Veloz, 339 F. Supp.2d at 513. In this regard, on a motion for summary judgment, it is the duty of the parties, not the Court, to sift through the record and bring to the Court's attention the pertinent information that may create or defeat a triable issue of fact. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted). The Local Rules require *the parties* "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(internal quotation marks and citations omitted).

### III.  FACTUAL BACKGROUND

Plaintiff's response to Defendants' Statement of Material Facts does not mirror the document it is being offered in response to such that the Court has had a difficult time piecing together what Plaintiff is admitting and what she is denying. Because she is proceeding *pro se*, the Court has read her response liberally and has read her responding affidavit in an attempt to determine the facts that are genuinely in dispute. After performing this exercise, and unless indicated otherwise, the Court finds that the following facts are *not* in dispute.

Plaintiff is an African-American female. On August 13, 2004, she was driving a vehicle in the City of Binghamton, New York. Def. Stat. of Mat. Facts ¶ 5. The vehicle belonged to Plaintiff's son and had a North Carolina license plate on the back of the vehicle. Id. ¶¶ 3-4. North Carolina license plates have on them an "annual registration sticker." Id. ¶ 8. The "annual registration

sticker" on the license plate on the vehicle Plaintiff was driving on August 13, 2004 was expired. Id.

Defendant Michael Chalson is a City of Binghamton Police Officer and was on duty on August 13, 2004 driving a marked police vehicle. At some point that day, Officer Chalson positioned his vehicle behind Plaintiff's vehicle and followed her. See Plf. Aff. ¶¶ 22, 24-26; Pl. Dep. (Def. Ex. A), p. 13.[3] Officer Chalson noticed that the "annual registration sticker" on the North Carolina license plate on Plaintiff's vehicle was expired. Def. Stat. of Mat. Facts. ¶¶ 8, 15. Officer Chalson activated his emergency lights and pulled Plaintiff over to the side of the street. Def. Stat. of Mat. Facts. ¶¶ 2, 14; Pl. Aff. ¶ 25. When Officer Chalson first approached Plaintiff's vehicle, Plaintiff asked why she had been pulled over and Officer Chalson told her that he believed she was driving an unregistered vehicle. Compl. ¶¶ 4-5; Def. Stat. of Mat. Facts. ¶ 18; Def. Ex. A at pp. 14, 16; Def. Ex. B at p. 34. A registration check performed by Officer Chalson from his in-car computer indicated that the vehicle was unregistered and that it was uninsured. Id. ¶ 13.[4] Officer Chalson also asked to see Plaintiff's drivers license and determined her driving privileges had been suspended. Plaintiff was issued three traffic tickets - one for operating an unregistered vehicle, one for operating an uninsured vehicle, and one for unlicensed operation of a vehicle. Id. ¶ 19. Plaintiff was found guilty of all three traffic charges, and, although she appealed her convictions, none were vacated or reversed and all three convictions are now final. Id. ¶¶ 19, 21-24; Pl. Stat. of Mat. Facts

---

[3] The parties dispute why and for how long Officer Chalson followed Plaintiff before he pulled her over. In this regard, Plaintiff asserts in her responding affidavit that Officer Chalson "followed the Plaintiff for the mere fact she was heading in a direction and an area that has been known for crime." Pl. Aff. ¶ 26. However, there is no dispute that Officer Chalson was behind Plaintiff when he activated his lights and pulled her over. See Id.; Pl. Dep. p. 13.

[4] Officer Chalson contends that he preformed this computer check before pulling Plaintiff over. Plaintiff disputes this but provides no support for her contention beyond the broad conclusory denial. Nonetheless, this fact is immaterial because there is no genuine dispute that Chalson observed the out-of-date annual registration sticker when he was behind Plaintiff's vehicle and immediately before he pulled her over.

at ¶ 10. This action followed.

## IV. PROCEDURAL BACKGROUND

Plaintiff's Third Amended Complaint asserts four "Counts" under the "Claims for Relief" section. In Count 1 Plaintiff asserts that Officer Chalson's action in pulling her over on August 13, 2003 "penalized and deterred [Plaintiff] in the exercise of her fundamental right to interstate travel and migration on account of her race and national origin" and thereby violated "the commerce clause[5] and privileges and immunities clauses of Article IV and the Fourteenth Amendment." 3rd Amed. Compl. ("Compl.") Count 1.

In Count 2 Plaintiff asserts that "Defendants Mayor Bucci, Police Chief John Butler and Officer Chalson jointly acting under color of law, engaged in intentional race discrimination in their drug interdiction efforts . . . [and] in so doing [violated Plaintiff's right] to be free from unlawful searches and seizures on account of her race and national origin." Compl. Count 2. "These actions violated Plaintiff's right to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States." Id. Plaintiff further asserts in Count 2 that Defendants maintained a "practice and policy of race based traffic stops." Id.

In Count 3 Plaintiff asserts that "Defendants . . . subjected Plaintiff to a lengthy detention without probable cause or reasonable suspicion to believe that any crime or traffic violation had been committed . . . in violation of the [Fourth][6] Amendment guarantee against unreasonable

---

[5] Plaintiff asserted in the 3rd Amended Complaint that "Officer Chalson's actions violated Plaintiff's right to travel, in violation of the *commerence* [*sic*] clause and . . . ." The Court presumes that Plaintiff is alleging that Defendant's action violated the Commerce Clause contained at Art. I, § 8, cl. 3 of the United States Constitution.

[6] Plaintiff asserts that the action was "in violation of the *Fourteenth* Amendment guarantee against unreasonable searches and seizures." The Court interprets the claim as one under the Fourth Amendment inasmuch as it is the Fourth Amendment that safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV.

searches and seizures." Compl. Count 3. In Count 4 Plaintiff asserts that the "drug interdiction methods employed by [Defendants] discriminated against the Plaintiff and others of African descent" in violation of "Title VI of the Civil Rights Act of 1964." Compl. Count 4. Plaintiff seeks in Count 4 (although not sought in the other three counts or in the general "Prayer for Relief") that the "evidence" obtained during her August 13, 2004 traffic stop "be dismissed under the 'Fruit of the Poisonous Tree,'" and that her "full driving privileges" be restored. Id.

Defendants previously moved to dismiss the case pursuant to Fed. R. Civ. 12(b)(6), arguing that Plaintiff's claims were barred by the Rooker-Feldman Doctrine or, alternatively, by the Heck Rule. See Defs. Mot. to Dismiss, dkt. # 27; District of Columbia Court of Appeals v. Feldman, 103 S.Ct. 1303, 1311 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 150 (1923); Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The Court granted this motion with respect to Count 4, finding that the Rooker-Feldman Doctrine barred the Court from adjudicating that claim. See Nov. 30, 2005 Decision & Order, pp. 3-4 [dkt. # 33]. The Court denied the motion with respect to Counts 1-3. See id. pp. 4-12. Because the Court found that there was insufficient information about the nature of Plaintiff's state conviction(s) arising from the traffic stop to determine whether Counts 1-3 would be barred under the Heck Rule, the Court ordered limited discovery on the circumstances surrounding Plaintiff's traffic stop and any convictions arising therefrom. Id. at pp. 7-8, 12. The parties have completed this discovery and, as indicated above, Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. See Def. Mot. Sum. Jud. [dkt. # 42]. In this regard, Defendants contend that Counts 1-3 are barred by the Heck Rule and, alternatively, that each claim fails as a matter of law.

**V. DISCUSSION**

    **a. The Heck Rule**

Defendants assert that all remaining claims are barred the Heck Rule because success on any of them would necessarily imply the invalidity of Plaintiff's convictions. The Supreme Court held in Heck that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)(footnote omitted).

At first blush, it appears that the Heck Rule would bar the three remaining Counts. Counts 1, 2 and 3 arise out of the August 13, 2004 seizure that resulted in the traffic tickets and subsequent convictions and seek to "recover damages for [an] allegedly unconstitutional . . . imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." Id. A judgment upholding Plaintiff's claim of false arrest and detention in violation of the Fourth Amendment, the right to interstate travel, and the Equal Protection Clause would imply the invalidity of her convictions because it would establish that the convictions were obtained based on evidence gained in violation of constitutional rights. See Lewis v. Donohue, 2006 WL 1555617, at * 2 (N.D.N.Y. June 6, 2006)("A judgment upholding Plaintiff's claim of false arrest and false imprisonment or malicious prosecution would imply the invalidity of his conviction.")(McAvoy, S.J.); Parks v. NYC Police Dep't, 2000 WL 1469574, at *2 (E.D.N.Y. Aug. 24, 2000)("[Plaintiff's]

equal protection claim fails because the Constitution forbids convictions that are the result of racially motivated enforcement decisions, so a finding in [Plaintiff's] favor would necessarily undermine the validity of his conviction.")(citations omitted).  Further, Plaintiff cannot "prove that the [resulting] conviction[s] . . . ha[ve] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Heck, 512 U.S. at 486-87.

However,  the Second Circuit has interpreted Heck as applying only when the subsequent conviction resulted in the plaintiff's incarceration. See Huang v. Johnson, 251 F.3d 65, 74-75 (2d Cir. 2001)(holding that Heck did not bar the plaintiff's § 1983 action, in part, because he had long since been released from custody, rendering a habeas remedy unavailable); Leather v. Ten Eyek, 180 F.3d 420, 424 (2d Cir. 1999)("Because Leather is not and never was in the custody of the State, he . . . has no remedy in habeas corpus. Having escaped the jaws of Heck, Leather should therefore be permitted to pursue his § 1983 claim in the district court unless principles of res judicata or collateral estoppel preclude his suit."); see also Yajure v. DiMarzo, 130 F. Supp.2d 568, 574  n. 2 (S.D.N.Y.  2001) ("I am in no position to overrule the [Second] Circuit's view that Heck applies only when a defendant is incarcerated.").   Here, there is no indication that Plaintiff was incarcerated because of her convictions on the traffic violations, and, therefore, the Heck Rule does not apply to any of the Counts.  Accordingly, the motion is denied in this regard and the Court proceeds to address the merits of the remaining counts.

### b. The False Arrest Claim

Since all of the claims have their genesis in Plaintiff's August 13, 2004 seizure, the Court will start by addressing the Fourth Amendment false arrest claim asserted in Count 3.  See Terry v.

9

Ohio, 392 U.S. 1 (1968)(Whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave, that individual has been "seized" or "arrested" within the meaning of the Fourth Amendment.).  A cause of action for false arrest will lie where Plaintiff shows, *inter alia*, "that the defendant intentionally confined [her] without [her] consent and without justification."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  However, it is well settled that if a police officer has a legal justification to stop and detain a person (such as probable cause), no claim for false arrest exists. See Weyant, 101 F.3d at 852 (probable cause is a complete defense to claims for false arrest); see also Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003)( "If probable cause existed, [Defendant] as a police officer would be privileged to make an arrest. " ); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999)("It is well established that appellant's Section 1983 claims against appellees for false arrest and false imprisonment must fail if the appellee-officers had probable cause to arrest him.").

   A police officer may stop and detain an individual to conduct a reasonable inquiry into whether crime is afoot without violating the Constitution if the officer possesses, at the time of the stop, a reasonable suspicion that criminal activity has occurred or is about to occur. Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty., 542 U.S. 177 (2004); Illinois v. Wardlow, 528 U.S. 119, 123 (2000); Terry, 392 U.S. at 20.  A motorist may permissibly be stopped by a police officer and detained when there is at least articulable and reasonable suspicion that either the vehicle or an occupant has violated some law, such as a provision of New York's Vehicle and Traffic Law. See Delaware v. Prouse, 440 U.S. 648, 663 (1979). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for

making the stop." Illinois v. Wardlow, 528 U.S. at 123 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch'' of criminal activity." Id. at 123-124 (quoting Terry at 27). Whether a police officer had a reasonable suspicion that criminal activity was afoot is determined by examining the totality of the circumstances confronting the officer at the time of the stop. Diamondstone v. Macaluso, 148 F.3d 113, 124 (2d Cir. 1998); see Devenpeck v. Alford, 125 S.Ct. 588, 593 (2004)("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time of the arrest*.")(emphasis added)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Here, when examining the totality of the undisputed circumstances known to Officer Chalson at the time of the stop, a reasonable fact finder could only conclude that he had an articulable and reasonable suspicion that the operator of the vehicle had violated New York's prohibition to operating an unregistered vehicle on a public road. In this regard, the undisputed facts indicate that at the time of the stop Officer Chalson had a reasonable suspicion that the driver of the vehicle was operating an unregistered vehicle on the streets of Binghamton. This reasonable suspicion was based upon his observation of the expired annual registration sticker on the back license plate of the vehicle. While Plaintiff contends in wholly conclusory fashion that Officer Chalson did not know that the vehicle was unregistered until after she was stopped, there is no dispute that the license plate on the back of Plaintiff's vehicle contained an expired registration sticker that was visible to anyone behind the vehicle, and that Officer Chalson was behind Plaintiff's vehicle immediately before he activated his emergency lights to pull Plaintiff over. Further, Plaintiff herself contends that immediately upon approaching her vehicle Officer Chalson articulated

11

his suspicion that the vehicle was unregistered and indicated that was the reason he pulled her over. In the face of Officer Chalson's sworn contention as to the basis of the stop and the undisputed fact that he articulated this basis immediately upon approaching Plaintiff's vehicle, Plaintiff's surmise that Officer Chalson did not see the expired registration sticker before he pulled her over raises, at most, a metaphysical doubt as to the basis of the stop. However, as indicated above, a metaphysical doubt is insufficient to defeat a properly supported motion for summary judgment.

Whether Officer Chalson initially pulled his police vehicle behind Plaintiff's vehicle because of Plaintiff's race (as Plaintiff asserts) or because he observed the out-of-date annual registration sticker on the vehicle (as Officer Chalson asserts) is of no moment because, at the time of the stop, he possessed legal justification to stop the vehicle. Devenpeck, 125 S.Ct. at 593. Officer Chalson's motivation in positioning himself behind Plaintiff's vehicle before the stop is irrelevant. See id., at 593-94. The reasonable suspicion and probable cause inquiry are objective ones and the subjective beliefs or motivations of the arresting officer are irrelevant. Id.; Whren v. United States, 517 U.S. 806, 813 (1996)(The "actual motivations of the individual officers involved" in a stop or detention "play no role" in the probable cause analysis.).

Once Officer Chalson legally pulled Plaintiff to the side of the street, he was legally justified to conduct a reasonable and brief investigation to either dispel or confirm his suspicion that the vehicle was registered and to issue any appropriate traffic citations. There is no indication that this investigation lasted longer than reasonable, or that it involved methods or means that were more intrusive than necessary under the circumstances. Plaintiff was not asked to step out of her vehicle and Officer Chalson did not enter the vehicle or perform any type of search of Plaintiff or the vehicle. Through this investigation, Officer Chalson gained reliable information that Plaintiff had

violated certain traffic laws - namely, that she was driving an unregistered and uninsured vehicle, and that she did not have a valid driver's license. This information provided ample probable cause for Plaintiff's continued detention for purposes of issuing her the three traffic tickets. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)(Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."); Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993)("A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." ), aff'd, 52 F.3d 310 (2d Cir. 1995).

As indicated by the resulting convictions on each of the three traffic tickets, Officer Chalson's belief on the issues of justification for the stop and detention was correct. Under these circumstances, no reasonable finder of fact could conclude that Chalson lacked a reasonable suspicion to stop the vehicle or probable cause to detain and ticket Plaintiff. Cameron v. Forgarty, 806 F.2d 380 (2d Cir. 1986) ("Where law enforcement officers have made [an] arrest, [a] resulting conviction is [a] defense to section 1983 action[s] asserting that [the] arrest was made without probable cause."). Because Plaintiff fails to establish that her Fourth Amendment rights were violated by the August 13, 2004 detention, all claims against all defendants premised upon this event fail as a matter of law. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)(to hold municipality liable as a "person" under § 1983, plaintiffs must show that a policy or practice of that entity caused the deprivation of their federal rights); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)(*per curiam*) ("[T]his was an action for damages, and neither Monell[], nor any

13

other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); see also Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993)("[I]t is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'")(quoting Monell, 436 U.S. at 690-91); McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 400 (S.D.N.Y. 2005)("A Monell claim against a municipality requires, as a predicate, an allegation of a constitutional violation against some individual actor."). Accordingly, any Fourth Amendment claim asserted in the 3rd Amended Complaint is dismissed.

### c. Impediment to Interstate Travel Claim

Plaintiff's claim brought under the Commerce Clause, and the Privileges and Immunities Clause of the Fourteenth Amendment and Article IV to the United States Constitution, also fails as a matter of law. With regard to the Commerce Clause, there is no allegation that Plaintiff was engaged in interstate trade, or that a state law or regulation impermissibly burdens interstate commerce. Thus, Plaintiff fails to assert a cognizable claim under the Commerce Clause. See Evac, LLC v. Pataki, 89 F. Supp. 2d 250, 263-63 (N.D.N.Y. 2000)(McAvoy, C. J.)

The Privileges and Immunities Clause of the Fourteenth Amendment provides that "[n]o state shall make any law which shall abridge the privileges or immunities of the citizens of the United States." U.S. Const., Amend. XIV. Article IV of the Constitution provides that "[t]he citizens of each state shall be entitled to all privileges and immunities of citizens in the several

states." U.S. Const. Art. IV, § 2. Among the privileges and immunities protected by the Constitution under these provisions is the right to travel. See Demiragh v. DeVos, 476 F.2d 403, 405 (2d Cir. 1973)(the right to travel is fundamental and requires a showing of a compelling state or local interest before it can be limited). As the Second Circuit explained:

> The federal guarantee of interstate travel does not transform state-law torts into federal offenses when they are intentionally committed against interstate travelers. Rather, it protects interstate travelers against two sets of burdens: "the erection of actual barriers to interstate movement" and "being treated differently" from intrastate travelers. Zobel v. Williams, 457 U.S. 55, 60, n. 6, 102 S.Ct. 2309, 2313, n. 6, 72 L.Ed.2d 672 (1982). See Paul v. Virginia, 8 Wall. 168, 180, 19 L.Ed. 357 (1868) (Art. IV, § 2 "inhibits discriminating legislation against [citizens of other States and] gives them the right of free ingress into other States, and egress from them"); Toomer v. Witsell, 334 U.S. 385, 395, 68 S.Ct. 1156, 1161, 92 L.Ed. 1460 (1948) (Art. IV, § 2 "insure [s] to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy").

Town of W. Hartford v. Operation Rescue, 991 F.2d 1039, 1047 (2d Cir. 1993).

Plaintiff pleads that she is New York resident, 3rd Amend. Compl. ¶ 2, and nowhere asserts that she was engaged in interstate travel at the time that she was stopped. Further, she has not pointed to any actual barriers to interstate travel or to any legislation that inhibits the rights of any citizens to freely move between the states. Thus, the claim fails as a matter of law and is dismissed.

### d. Selective Enforcement Claim

In Count 2, Plaintiff asserts that she was stopped on August 13, 2004 on account of her race in violation of her rights secured by the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). The Second Circuit has recognized that most claims brought under the Equal Protection Clause on the basis of racial discrimination fall into one of two categories. Henry v. Daytop Village Inc., 42 F.3d

89, 95 (2d Cir. 1994)(citing Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994). In the first category are claims in which a plaintiff asserts that she was innocent of wrongdoing but has nonetheless been the subject of some wrongful action (arrest, termination or employment, disciplinary proceeding, etc.) because of race. Id. In the second category are claims by a plaintiff asserting that regardless of her guilt or innocence, certain laws or penalties were applied to her because of her membership in a group whereas they were not applied to others similarly situated individuals who are outside her group. Id. Because there is no doubt that Plaintiff was guilty of wrongdoing at the time she was stopped by Officer Chalson on August 13, 2004, Plaintiff must necessarily proceed on the selective enforcement theory. See id. at 96 ("Whether or not [the plaintiff] was actually guilty of any misconduct has no bearing on the resolution of this disparate treatment claim.").

To establish her Fourteenth Amendment claim for selective enforcement, Plaintiff must prove: (1) that similarly situated individuals of a different race were not prosecuted for driving obviously unregistered vehicles (thus creating a discriminatory effect in enforcement), and (2) that such selective treatment was based on the impermissible considerations of race or national origin. United States v. Armstrong, 517 U.S. 456, 465 (1996); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001); see also Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) ("it is axiomatic that a plaintiff [bringing a selective enforcement claim under § 1983 ] must allege that similarly situated persons have been treated differently").

Defendants assert that they are entitled to summary judgment on this claim because Plaintiff has failed to demonstrate the existence of any similarly situated individuals of another race against

16

whom the laws were applied differently. Defs. Mem. of Law at p. 14. Plaintiff counters that it has been difficult to find such individuals and that she has been unable to obtain any records from the police regarding traffic stops. Pl. Mem. of Law at p. 12. The Court is mindful that it ordered only limited discovery in this case to establish "the basis for Plaintiff's August 13, 2004 traffic stop and any convictions" arising therefrom. Nov. 30, 2005 Decision & Order at p. 12. Therefore, the Court concludes that it would be improper to decide this portion of the motion without affording Plaintiff proper discovery. Accordingly, summary judgment for Defendants on the selective enforcement claim would be inappropriate at this time. Because the record is not sufficiently developed to determine whether or not a constitutional violation occurred, Officer Chalson's motion for summary judgment on the grounds of qualified immunity is also premature. Saucier v. Katz, 533 U.S. 194, 201 (2001); Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002); Loria v. Gorman, 306 F.3d 1271, 1281 (2d Cir. 2002) . Defendants will be afforded an opportunity to again move for summary judgment on this claim after a second round of discovery is conducted.

## III. CONCLUSION

For all of the reasons discussed above, Defendants' motion for summary judgment is **GRANTED IN PART and DENIED IN PART**. Defendants' motion is **GRANTED** with respect to Counts 1 and 3 of the 3rd Amended Complaint, and the claims contained therein are **DISMISSED**, and the motion is **DENIED** with respect to Plaintiff's claim of selective enforcement. The parties shall now have the ability to conduct full discovery on the remaining claim (as directed by Magistrate Judge Peebles), and are granted leave to file a second motion for summary judgment following this second phase of discovery.

**IT IS SO ORDERED**

DATED:   July 21, 2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge